IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

ROBERTO MARTINEZ LEBRON
AND UPDATE MUSIC, CORP.,

Plaintiffs,

v.

CARLOS EFREN REYES ROSADO,
ET AL.,

Defendants.

CIV. NO.: 24-1045 (SCC)

**OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss by Defendants Carlos Efren Reyes Rosado, including as representative of the Reyes-Lopez conjugal partnership, and Carbon Fiber Music, Inc. (collectively, "Defendants"). Docket No. 28. For the reasons set forth below, the Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

Plaintiffs Update Music, Corp. ("Update Music") and Roberto Martinez Lebron, known professionally as Revol ("Revol"), allege that they, Reyes Rosado, known professionally as Farruko ("Farruko"), and a Hector Delgado ("Delgado"), who is not party to this case, "negotiated the

terms and executed an agreement for the distribution of musical [sic] master recording titled '*SOLA*.'" Docket No. 25, ¶ 11.[1] According to Update Music and Revol (collectively, "Plaintiffs"), "[t]he basic terms of the agreement stated that Update Music, [Revol's] production company, would own and commercially exploit" the master recording and that Farruko, Revol, and Delgado would each receive a third "of the mechanical royalties it generated." *Id.* at ¶ 12. Plaintiffs contend that "'Sola' was intended to be recorded and included on an album that Plaintiffs recorded with" Delgado "called 'Remember Me'" and that "Update Music paid $30,000 to Mr. Delgado for his services in recording his participation in 'Remember Me.'" *Id.* at ¶¶ 13, 16.

---

[1] Plaintiffs cite "Exhibit 1," which they describe as the "Songwriter/Performer Royalty Agreement." Docket No. 25, ¶ 11. There is nothing attached to the Amended Complaint at Docket No. 25. Approximately six weeks following the filing of the original complaint, Plaintiffs' counsel submitted a motion stating that "Plaintiffs inadvertently omitted the exhibit to which they referred in the [original complaint]" and that "[t]hey submit that exhibit with th[e] motion." Docket No. 6, pg. 1. The Court will consider the exhibit at Docket No. 6-1 for the purpose of disposing of the Motion to Dismiss since both parties treat it as the relevant document. *See* Docket Nos. 25, 28.

Roberto Martinez Lebron, et al. v. Carlos Efren                    Page 3
Reyes Rosado, et al.

Plaintiffs further state that, "[r]elying on the existence of the contract with Farruko for the delivery of a master for the 'Remember Me' album," Update Music "executed an agreement with WK Records, a distributor, for the distribution and commercial exploitation of the master recordings on the 'Remember Me' album and other content, on digital platforms for public consumption throughout the world." *Id.* at ¶ 18. Plaintiffs state that they "have recorded and had distributed master recordings that produce more than $100,000 per sound recording, and, given the quality of the artists on the 'Remember Me' album, [they] anticipated netting an average of at least $50,000 per sound recording." *Id.* at ¶ 19. "Because of Defendants' breach of the contract," Plaintiffs allege they "have not been able to recoup the $30,000 investment [or] received the expected profits from the recordings on 'Remember Me' of not less than $250,000." *Id.* at ¶ 21.

Plaintiffs state that "despite executing the contract for Sola with Plaintiffs, and then entering into a verbal contract to substitute 'Rumor de Guerra' for 'Sola,' and finally

Plaintiffs agreeing to amend the contract again to switch back to 'Sola' because the [sic] strong language in 'Rumor de Guerra,' Defendants breached and refused to authorize the release of the album 'Remember Me.'" *Id.* at ¶ 20. Plaintiffs contend that "[d]espite multiple and repeated requests by [Revol] for the delivery of the 'Sola' master recording, Defendants have has [sic] never delivered to [Revol] or Update Music, and, as a result, [Revol] and Update Music have not been able to distribute it or the rest of the album through WK Records." *Id.* at ¶ 25. Plaintiffs finally allege that Carbon Fiber Music, Inc., "through its attorney, Frank Martinez, stated that" it "will not agree to the release" of the two songs. *Id.* at ¶ 26 (emphasis in original). In all, Plaintiffs contend that "[a]s a result of the aforementioned breaches," they "suffered severe damages, in the form of tarnishment [sic] to their reputation and credibility before WK Records, loss of monies, expenses, profits and production costs which are estimated at an amount not less of [sic] Five Hundred Thousand Dollars ($500,000.00)." *Id.* at ¶ 27.

Plaintiffs list two causes of action. First, they allege breach of contract and that "[a]s a direct and proximate result of defendant's [sic] material breach," they "suffered damages in the form of reasonable expenses in reliance on defendant's [sic] performance and subsequent breach of the contract, loss of profits, incurred in substantial expenses, and costs which are estimated at an amount not less than Two Hundred Fifty Thousand Dollars ($250,000.00)." *Id.* at ¶¶ 28–29.[2] Second, Plaintiffs allege tort and that "Defendants' refusal to allow the release of the album , [sic] and the loss of credibility and tarnishing of Plaintiffs' reputation in the music industry caused substantial damages in an amount of not less than two hundred fifty thousand dollars $250,000 [sic]." *Id.* at ¶¶ 30–32.

Defendants moved to dismiss. Docket No. 28. Plaintiffs filed an opposition. Docket No. 31. The Motion to Dismiss is now ripe for disposition.

---

[2] Two paras. 29 are listed one after another and following para. 28. *See* Docket No. 25, pg. 6. The Court is citing both.

## II. ANALYSIS

"Federal courts are courts of limited jurisdiction" and can thus "hear cases only if and to the extent that they are authorized to do so by statute." *Rhode Island v. EPA*, 378 F.3d 19, 22 (1st Cir. 2004) (citing *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group*, 362 F.3d 136, 138 (1st Cir. 2004); *Bell v. New Jersey*, 461 U.S. 773, 777 (1983)). "Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case." *Acosta-Ramirez v. Banco Popular de Puerto Rico*, 712 F.3d 14, 18 (1st Cir. 2013) (citing *Donahue v. City of Boston*, 304 F.3d 110, 117 (1st Cir. 2002)).[3] Therefore, while Defendants raise several defenses, the Court begins—and ends—with subject-matter jurisdiction.

### A.  Standard of Review

Defendants argue lack of subject-matter jurisdiction but mention only Rule 12(b)(6) of the Federal Rules of Civil

---

[3] *See also Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 149 (1st Cir. 2002) ("When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter.") (citing *NE Erectors Ass'n v. Sec'y of Labor*, 62 F.3d 37, 39 (1st Cir. 1995); *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

Roberto Martinez Lebron, et al. v. Carlos Efren
Reyes Rosado, et al.

Page 7

Procedure in the standard-of-review section of their motion.
Docket No. 28, pg. 3–7. "The proper vehicle for challenging a
court's subject-matter jurisdiction is [Rule 12(b)(1)],"
however. *Valentín v. Hospital Bella Vista*, 254 F.3d 358, 362 (1st
Cir. 2001).[4] "In deciding the question" of subject-matter
jurisdiction, the Court "may consider whatever evidence has
been submitted in the case." *Acosta-Ramirez*, 712 F.3d at 18
(citing *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996);
*Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701
(7th Cir. 2003)).

### B. Applicable Law

Defendants contest, Docket No. 28, pgs. 4–7, whether
Plaintiffs have met the amount requirement for diversity

---

[4] "A key difference [between Rules 12(b)(1) and 12(b)(6)] is that, if a Rule
12(b)(1) motion contests factual allegations of the complaint, the court
must engage in judicial factfinding to resolve the merits of the
jurisdictional claim," whereas "Rule 12(b)(6) motions . . . are always facial,
not factual, challenges to the complaint." *Marasco & Nesselbush, LLP v.
Collins*, 6 F.4th 150, 166 n. 19 (1st Cir. 2021) (citing *Valentin*, 254 F.3d at 363-
65 (1st Cir. 2001); *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th
63, 69–70 (1st Cir. 2021)).

jurisdiction under 28 U.S.C. § 1332, which Plaintiffs invoke,
Docket No. 25, ¶ 1.[5] Diversity of citizenship is uncontested.

Since Plaintiffs' "'general allegation that the dispute
exceeds the jurisdictional minimum'" has been "challenged,
[they bear] 'the burden of alleging with sufficient
particularity facts indicating that it is not a legal certainty that
the claim involves less than the jurisdictional amount.'"
*Andersen v. Vagaro, Inc.*, 57 F.4th 11, 15 (1st Cir. 2023) (quoting
*Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n*, 942
F.2d 84, 88 (1st Cir. 1991)). The "burden may be met by
amending pleadings or submitting affidavits." *Abdel-Aleem v.
OPK Biotech LLC*, 665 F.3d 38, 42 (1st Cir. 2012) (citing *Dep't of
Recreation & Sports of P.R.*, 942 F.2d at 88).[6]

---

[5] At least that is what the Court discerns from the following statement,
copied *verbatim* from the Amended Complaint: "This Honorable Court has
jurisdiction over the present action pursuant to 28 U.S.C. 1332 over state
law claims under the to 28 U.S.C. 1332 over state law claims under the
Civil Code of Puerto Rico, Title 31 L.P.R.A.§9751 *et seq.*." Docket No. 25, ¶
1.

[6] *See also Andersen*, 57 F.4th at 15 ("To fend off a jurisdictional challenge, a
plaintiff may amend the complaint or submit additional documentation,
such as affidavits, medical reports, or interrogatories.") (citing *Abdel-
Aleem*, 665 F.3d at 42–43; *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298
U.S. 178, 189 (1936)).

"The well-established test," going back to *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938), "states [that the] sum claimed by the plaintiff controls if the claim is apparently made in good faith [and that it] must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Andersen*, 57 F.4th at 14–15 (cleaned up). "Good faith is measured objectively; the question is whether to anyone familiar with the applicable law this claim could objectively have been viewed as worth more than the jurisdictional minimum." *Abdel-Aleem*, 665 F.3d at 41 (cleaned up).

Since "there are multiple plaintiffs, each must allege a claim that is in excess of $75,000." *Stewart v. Tupperware Corp.*, 356 F.3d 335, 337 (1st Cir. 2004) (citing *Clark v. Paul Gray Inc.*, 306 U.S. 583, 589 (1939)). "[S]eparate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Spielman v. Genzyme Corp.*, 251 F.3d 1, 7 (1st Cir. 2001) (quoting throughout *Snyder v. Harris*, 394 U.S. 332, 335 (1969)).

Given that this is a diversity case, the Court applies the choice-of-law rules of Puerto Rico, the forum territory. *See, e.g.*, *Hartford Fire Ins. Co. v. CNA Ins. Co. (Europe) Ltd.*, 633 F.3d 50, 54 n. 7 (1st Cir. 2011) (citing *Montalvo v. Gonzalez–Amparo*, 587 F.3d 43, 46 (1st Cir. 2009)). In Puerto Rico, "the laws of the jurisdiction with the most significant contacts to the disputed issues will apply." *New Ponce Shopping Center, S.E. v. Integrand Assur. Co.*, 86 F.3d 265, 267 (1st Cir. 1996) (citing *A.M. Capen's Co. v. American Trading & Prod. Corp.*, 74 F.3d 317, 320 (1st Cir. 1996)),[7] and it appears undisputed that that is Puerto Rico. The Court "'look[s] to [Puerto Rico] law to determine the nature and extent of the right to be enforced in [this] diversity case,' [but] the 'determination of the value of the matter in controversy for purposes of federal jurisdiction is a federal

---

[7] That is the case in contract cases unless the contract has a choice-of-law provision; "where such a clause exists, it is deemed valid and reasonable unless the party opposing its applicability establishes otherwise." *Lincoln Rd. Prods. v. Reign Entm't Grp.*, cv-12-1895-JAG-BJM, 2014 WL 12726554, at *3 (D.P.R. Sept. 8, 2014) (citing *Usine à Glace Nationale, S.A. v. Pepsi Cola Mktg. Corp.*, 206 F.Supp.2d 253, 255 (D.P.R. 2002); *Odishelidze v. Agora, Inc.*, cv-95-1727-CCC, 1996 WL 655787, at *1 (D.P.R. Oct. 31, 1996)).

question to be decided under federal standards.'" *Stewart*, 356
F.3d at 339 (quoting *Horton v. Liberty Mut. Ins. Co.*, 367 U.S.
348, 352–53 (1961)).

The Court now turns to Plaintiffs' two alleged causes
of action: one is for breach of contract, the other for tort.

### C. The Contract Claim

According to the Amended Complaint, "Update Music
paid $30,000 to Mr. Delgado for his services in recording his
participation in 'Remember Me.'" *Id.* at ¶ 16. Plaintiffs also
allege that they "have recorded and had distributed master
recordings that produce more than $100,000 per sound
recording, and, given the quality of the artists on the
'Remember Me' album, [they] anticipated netting an average
of at least $50,000 per sound recording." *Id.* at ¶ 19. "Because
of Defendants' breach of the contract," Plaintiffs contend they
"have not been able to recoup the $30,000 investment, nor
have Plaintiffs received the expected profits from the
recordings on 'Remember Me' of not less than $250,000." *Id.*
at ¶ 21. Further, in the opposition to the Motion to Dismiss,
Plaintiffs state that "the pleadings allege that the value of the

breach of contract is more than $250,000," that "Farruko has had a single recording, 'Pepas,' achieve more than a billion streams," and that, "[a]s the Amended Complaint alleges, the intent was to have the recording object of this recording [sic] appear on an album with recordings by Bad Bunny and other significant reggaetoneros." Docket No. 31, pg. 3.

Aside from the $30,000 paid to Delgado, all Plaintiffs provide is "bald statements and round numbers," which are insufficient. *Abdel-Aleem*, 665 F.3d at 43.[8] Moreover, while the $30,000 payment would be rather easy to substantiate, Plaintiffs have not done so. *See Andersen*, 57 F.4th at 16 ("Despite *Abdel-Aleem*'s warning to provide substantiation for the amount claimed once challenged, [plaintiff] relied entirely on her complaint.") (citing 665 F.3d at 43).[9]

---

[8] The requirement may not be met even when a "highly specific figure" is alleged. *See Andersen*, 57 F.4th at 16.

[9] *Cf. Spencer v. Eversource Energy Serv. Co.*, cv-16-353-JL, 2017 WL 4326481, at *3 (D.N.H. Sept. 28, 2017) ("[P]laintiffs allege that they have spent over $600,000 renovating their property. This assertion is supported by an affidavit detailing the expenditures, the accuracy of which the defendants do not dispute. The plaintiffs further claim . . . aesthetic damage to the property. . . They seek damages 'for their personal investment in money, equipment use and labor.' [T]hese allegations are sparse. . . [However,]

Plaintiffs' "lack of substantiation contrasts with [First Circuit] cases upholding diversity jurisdiction on the basis of the minimum amount in controversy." *Abdel-Aleem*, 665 F.3d at 43. As explained in *Abdel-Aleem*, the First Circuit in *Stewart* found that, "in response to defendant's challenge to [the] amount in controversy, plaintiffs met [the] burden by supplying written interrogatories and multiple medical reports describing and documenting injuries." *Id.* (citing *Stewart*, 356 F.3d at 338). And in *Hardemon v. City of Boston*, the First Circuit found that the "amount in controversy was sufficiently established based on [an] affidavit attached to [the] amended complaint itemizing lost wages and other damages claimed." *Id.* (citing 144 F.3d 24, 26 (1st Cir. 1998)). Here, there is no such documentation.

The Court also lists as illustrative the findings of other courts in this District at the motion-to-dismiss stage. In *Reyes de Leon v. Coconut Properties, LLC*, another court in this District found sufficient allegations where the plaintiff "itemize[d]

---

[t]he Complaint could be fairly read as alleging that the bulk of plaintiffs' $600,000 investment will be lost as a result of the aesthetic damage to their property caused by the alleged [misconduct]." (cleaned up).

Roberto Martinez Lebron, et al. v. Carlos Efren
Reyes Rosado, et al.

Page 14

her compensatory damages sought," "attempt[ed] to calculate the[] damages," and "list[ed] the purported amount of recovery for each one." 567 F.Supp.3d 343, 347 (D.P.R. 2021). Plaintiffs here have done none of these.

In *Caribbean Celular Unlocks v. Santiago*, yet another court in this District found that the amount-in-controversy requirement was not met where the plaintiffs alleged $14,000 for a retainer at issue, "no less than $20,000 breach of contract damages," $50,000 for one of the plaintiffs and $25,000 for his wife for "mental anguish," and $10,000 for the conjugal partnership for "'the economic crisis and relocation of their life after losing their business, and the attorney fraud.'" cv-18-1462-RAM, 2019 WL 3229155, at *2 (D.P.R. Jul. 17, 2019) (quoting the complaint). That court noted that, even if the first two claims and the last claim were valid, "the resulting amount of $44,000 would still fall short of the required $75,000 exclusive of interest and costs." *Id.* The other claimed damages, for mental anguish, were not backed up with any "particularized details." *Id.* at *3. The plaintiffs did "present[] documents," even if "unauthenticated," that "apparently

show[ed] that [one of them] [wa]s receiving psychiatric care."
*Id.* Even if the documents were admitted, "they would still be
insufficient to overcome the challenge posed by [the] Motion
to Dismiss." *Id.* (citing *Gomez v. K Mart Corp.*, cv-13-11242-
LTS, 2013 WL 4828245 (D. Mass. Sept. 3, 2013)). Here,
Plaintiffs have done a lot less. They have presented no
documents aside from the alleged contract—which is undated
and has not been signed by one the three parties to it, *see*
Docket No. 6-1.[10]

### D. The Tort Claim

The Court now turns to the tort claim. Plaintiffs make
no new allegations as to tort in the Amended Complaint;
rather, they state that "Defendants' breach of contract caused
damage to Plaintiffs' reputation in the industry," thus
"caus[ing] substantial damages" of $250,000. Docket No. 25,

---

[10] *See also Deugoue v. Icelandair, EHF*, cv-23-11615-IT, 2024 WL 4069020, at
*4 (D. Mass. Sep. 5, 2024) ("The only damage amount articulated in the
Amended Complaint is the $1,761 [defendant] offered [plaintiff] for his
damaged baggage. But [plaintiff] rejected that sum and expressly asserts
that he is *not* seeking recovery for his damaged baggage. The rest of
[plaintiff's] allegations speak in 'general terms' and 'offer[] no particulars,'
a method of pleading amount-in-controversy which the First Circuit [has]
rejected.") (emphasis in original) (citing *Abdel-Aleem*, 665 F.3d at 43-45).

¶¶ 31–32. In the opposition to the Motion to Dismiss, Plaintiffs "allege that the tort of breaching the contract hurt Plaintiffs' reputation in the relatively small group of participants in the reggaeton genre will [sic] cause him damage in an amount not less than $250,000." Docket No. 31, pg. 3. They cite 31 L.R.R.A. § 5141 ("Article 1802") to argue that the Puerto Rico Civil Code "provides for recovery of tort damages arising from negligent acts or omissions." Docket No. 31, pg. 2.

The Court starts by noting that reputation damages for breach of contract have been "universally rejected" because they are "too speculative and could not reasonably be presumed to have been contemplated by the parties when they formed the contract." *Rice v. Cmty. Health Ass'n*, 203 F.3d 283, 288 (4th Cir. 2000) (citing *Skagway City Sch. Bd. v. J.W. Davis*, 543 P.2d 218, 225 (Alaska 1975), overruled on other grounds by *Diedrich v. City of Ketchikan*, 805 P.2d 362, 366 n. 8 (Alaska 1991)).[11]

_____

[11] *See also Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888, 892 (1st Cir. 1988) (finding that reputation damages in contract cases are unavailable in "virtually all . . . jurisdictions"); *Frangipani v. Boecker*, 64

Article 1802 governs tort liability in Puerto Rico and "imposes responsibility for damages caused by negligence or fault." *Irvine v. Murad Skin Research Lab'ys., Inc.*, 194 F.3d 313, 321 (1st Cir. 1999). It provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 L.R.R.A. § 5141.

Article 1802 "generally does not apply in the context of commercial transactions." *Linares-Acevedo v. Acevedo*, 38 F. Supp. 3d 222, 228 (D.P.R. 2014) (citing *Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*, 449 F.3d 85, 88 (1st Cir. 2006); *Betancourt v. W.D. Schock Corp.*, 907 F.2d 1251, 1255 (1st Cir. 1990)). There is an exception, however:

> A plaintiff may bring a negligence claim based on a contractual relationship when there is both an alleged breach of contract and an alleged breach of the general duty not to negligently cause injury. This general duty not to act negligently must arise out of conditions separate from the parties' contract. If a plaintiff's damages arise exclusively from a

Cal. App. 4th 860, 865, 75 Cal.Rptr.2d 407, 410 (1998) ("The invariable rule is pronounced by a legion of cases that damages are not recoverable for . . . injury to reputation resulting from breach of contract.") (cleaned up).

> defendant's alleged breach of contract, the
> plaintiff does not have a separate cause of action
> for negligence.
> *Id.* (quoting throughout *Nieves Domenech v.
> Dymax Corp.*, 952 F.Supp. 57, 65–66 (D.P.R.
> 1996)).

The exception does not apply. As in several cases before other courts in this District, the tort claim is not separate from the breach of contract but rather intertwined with it.[12] And as in yet another case before yet another court in this District,[13] that the tort claim is not separate from the contract claim Plaintiffs seem to admit. Docket No. 25, ¶ 31 ("Defendants' breach of contract caused damage to Plaintiffs' reputation in the industry."); Docket No. 31, pg. 3 ("Plaintiffs allege that the tort of breaching the contract hurt Plaintiffs' reputation.").

Plaintiffs cite *Muñiz–Olivari v. Steifel Labs.*, 174 D.P.R. 813 (2008), from the Puerto Rico Supreme Court for the

---

[12]  *See, e.g., Lincoln Rd. Prods.* 2014 WL 12726554, at *5; *Burk v. Paulen*, 100 F. Supp. 3d 126, 136 (D.P.R. 2015).

[13] *CPC Carolina PR, LLC v. P.R. CVS Pharm., LLC*, 494 F. Supp. 3d 144, 156 (D.P.R. 2020).

proposition that "tort and *ex contractu* actions 'share essential
elements'" and that "a tort can arise from a breach of
contract," which "is what Plaintiffs allege happened here."
Docket No. 31, pg. 2.[14] First, the questions that were certified
to the Puerto Rico Supreme Court and that that court thus
answered are irrelevant to this action.[15] Second, as explained
above, there is a narrow exception under which a tort claim
can be based on a contractual relationship: it can happen only
when there is both alleged breach of contract and alleged
breach of the general duty under tort law not to negligently
cause injury. *Linares-Acevedo*, 38 F. Supp. 3d at 228. That is not
what Plaintiffs allege happened. Third, if what they seek is for

---

[14] *Ex contractu* is Latin for "from a contract" and means "[a]rising from a
contract." Black's Law Dictionary (12th ed. 2024).

[15] *See Muñiz-Olivari v. Stiefel Lab'ys, Inc.*, 441 F. App'x 4, 5 (1st Cir. 2011)
("The questions certified, after commentary from the parties, were: 1.
Whether pain and suffering damages are available to a party to a contract
in a civil action for breach of contract which does not involve any separate
tort allegations; and 2. Whether pain and suffering damages are available
to a non-party to a contract who is directly affected by a breach of contract
in a civil action for breach of contract which does not involve any separate
tort allegation.") (citing *Muñiz–Olivari v. Stiefel Labs., Inc.*, cv-03-02076-JP,
2010 WL 891325, at *2 (D.P.R. Mar. 8, 2010)).

the Court to recognize another exception, Plaintiffs, having "reject[ed] a state forum in order to bring suit in federal court under diversity jurisdiction[,] cannot expect that new trails will be blazed." *Ryan v. Royal Ins. Co. of America*, 916 F.2d 731, 744 (1st Cir. 1990).[16]

The Court notes two final matters. First, Plaintiffs cite, "[b]y way of comparison," Docket No. 31, pg. 3, *Berg v. San Juan Marriott Hotel & Stellaris Casino*; that case, however, dealt with false imprisonment, 261 F. Supp. 3d 213, 217–18 (D.P.R. 2016), and is inapposite.

Second, the claim for tort did not appear in the original complaint. *Compare* Docket No. 1 *with* Docket No. 25. The original complaint was for breach of contract for $500,000. Docket No. 1, ¶ 22–24. The Amended Complaint lists $250,000 for breach of contract and another $250,000 for tort, totaling $500,000. Docket No. 25, ¶¶ 28–32. That, after the addition of

---

[16] *See also President & Fellows of Harvard Coll. v. Zurich Am. Ins. Co.*, 77 F.4th 33, 35 (1st Cir. 2023) ("Where, as here, a federal court sits in diversity jurisdiction, tasked with following state law, it is not free to innovate but, rather, must apply state substantive rules of decision as those rules have been articulated by the state's highest tribunal.") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938)).

the tort claim, the amount in total is still $500,000 suggests that these are "imaginary number[s]." *Abdel-Aleem*, 665 F.3d at 43 (quoting throughout *Abdel-Aleem v. OPK Biotech LLC*, cv-11-10397-RGS, 2011 WL 1304642, at *1 n. 1 (D. Mass. Apr. 6, 2011)).

### E. Final Note

Defendants first challenged the amount in controversy in their motion to dismiss the original complaint. Docket No. 12. Plaintiffs elected to amend the complaint. The First Circuit "ha[s] made clear that merely reiterating general descriptions of damages is insufficient, particularly when a plaintiff is put on notice of the complaint's deficiencies by a [Rule] 12(b)(1) motion to dismiss." *Andersen*, 57 F.4th at 15 (citing *Abdel-Aleem*, 665 F.3d at 42–43). And Plaintiffs have not "provided any relevant case law from which [the Court] could determine [their] objective good faith." *Abdel-Aleem*, 665 F.3d at 45. Plaintiffs cite various cases for general statements on the amount-in-controversy requirement; the two cases they cite apparently for purposes of demonstrating their claims are both, as explained above, inapposite.

"Jurisdiction is not conferred by the stroke of a lawyer's pen," *id.* at 43 (quoting throughout *Diefenthal v. Civil Aeronautics Bd.*, 681 F.2d 1039, 1052 (5th Cir. 1982)), and this Court has "a responsibility to police the border of federal jurisdiction," *Spielman*, 251 F.3d at 4 (citing *Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 352 (7th Cir. 1995)). Accordingly, this case is dismissed without prejudice for want of subject-matter jurisdiction.

### III. Conclusion

In view of the above, the Court **GRANTS** the Motion to Dismiss at Docket No. 28. The case is **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 14th day of January 2025.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE